# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| DAVID SCURA, AND CLIFFORD DAY, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BRAD K. HEPPNER, JON R. SABES, STEVEN F. SABES, PETER T. CANGANY, RICHARD W. FISHER, THOMAS O. HICKS, DENNIS P. LOCKHART, BRUCE W. SCHNITZER, THE BENEFICIENT COMPANY GROUP L.P., FOXO TECHNOLOGIES INC., and EMERSON EQUITY LLC,<br><br>Defendants. | Case No. 3:23-CV-00680-D |

**MEMORANDUM OF LAW IN SUPPORT OF FMULLER LLC'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL ON BEHALF <u>OF PURCHASERS OF GWG PREFERRED STOCK</u>**

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ............................................................................................. 1

II. STATEMENT OF FACTS ..................................................................................................... 3

III. ARGUMENT ......................................................................................................................... 5

   A. FMuller Should Be Appointed Lead Plaintiff for GWG Preferred Stock Purchasers ......... 5

      1. Movant Filed a Timely Motion ....................................................................................... 6

      2. Movant Has the Largest Financial Interest in the Action ................................................ 7

      3. Movant Otherwise Satisfies the Requirements of Rule 23 .............................................. 8

         a. Movant's Claims are Typical ..................................................................................... 8

         b. Movant is an Adequate Representative ..................................................................... 9

   B. Lead Plaintiff's Selection of Counsel Should Be Approved ............................................. 10

IV. CONCLUSION .................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**             **Pages**

*Berger v. Compaq Comput. Corp.*,
 257 F.3d 475 (5th Cir. 2001) .................................................................................................. 9

*Feder v. Elec. Data Sys. Corp.*,
 429 F.3d 125 (5th Cir. 2005) .................................................................................................. 9

*Gluck v. CellStar Corp.*,
 976 F. Supp. 542 (N.D. Tex. 1997) ........................................................................................ 9

*Hohenstein v. Behringer Harvard REIT I, Inc.*,
 No. 3:12-CV-3772-G, 2012 WL 6625382 (N.D. Tex. Dec. 20, 2012) .................................... 8

*Holley v. Kitty Hawk, Inc.*,
 200 F.R.D. 275 (N.D. Tex. 2001) ........................................................................................... 7

*In re Olsten Corp. Sec. Litig.*,
 3 F. Supp. 2d 286 (E.D.N.Y. 1998) ........................................................................................ 7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
 182 F.R.D. 42 (S.D.N.Y. 1998) .............................................................................................. 8

*Mullen v. Treasure Chest Casino, L.L.C.*,
 186 F.3d 620 (5th Cir. 1999) .................................................................................................. 8

*Mullins v. AZZ, Inc.*,
 No. 4:18-CV-025-Y, 2018 WL 7504312 (N.D. Tex. Aug. 9, 2018) .................................. 7, 8

*Schwartz v. TXU Corp., et al.*,
 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. 2005) ........................................................ 8

## **Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................................... 1, 5
15 U.S.C. § 78u-4(a)(3)(B)(i) ........................................................................................................... 2, 5
15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................................................................ 7
15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................................. 2, 3, 6
15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) .................................................................................................. 6
15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ....................................................................................................... 6
15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ............................................................................................... 10
15 U.S.C. § 78u-4(a)(3)(B)(v) ..................................................................................................... 1, 3, 10

Lead Plaintiff Movant FMuller LLC ("Movant" or "FMuller") respectfully submits this memorandum of law in support of its motion pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an order: (1) appointing FMuller as Lead Plaintiff on behalf of purchasers of GWG Holdings Inc.'s ("GWG") Preferred Stock under 15 U.S.C. § 78u-4(a)(3)(B); (2) approving Movant's selection of Berger Montague PC as Lead Counsel and Kendall Law Group, PLLC as Local Counsel for the proposed Class of purchasers of GWG Preferred Stock pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v); and (3) granting such other relief as the Court may deem to be just and proper (the "Motion").

## I.   PRELIMINARY STATEMENT

FMuller should be appointed Lead Plaintiff on behalf of all persons and entities who purchased or otherwise acquired GWG's L Bonds or Preferred Stock between December 23, 2017 and April 20, 2022, both dates inclusive (the "Class Period"), and who were damaged thereby ("the Class").[1] FMuller respectfully submits that it is the presumptively most adequate plaintiff in this

---

[1] On May 26, 2023, seven days before the deadline to file a lead plaintiff motion in the instant action, Thomas Horton ("Horton") and Frank Moore ("Moore") filed a class action complaint in this District alleging violations of Sections 11, 12, and 15 of the Securities Act of 1933 on behalf of all persons who acquired L Bonds issued by GWG pursuant to a registration statement that became effective on June 3, 2020. *See Horton et al. v. Heppner, et al.*, Case No. 3:23-cv-01230-X (N.D. Tex.) ("*Horton*"). The *Horton* action has not been designated as a related case to the instant action. Although the *Horton* complaint asserts entirely different claims than those asserted here, on behalf of a different putative class (the instant suit is brought on behalf of purchasers of GWG's L Bonds and Preferred Shares during the period of December 23, 2017 through April 20, 2022), the *Horton* plaintiffs have not published notice of the filing of their class action as required by the PSLRA. Accordingly, Movant FMuller does not seek consolidation of this instant action with *Horton*, but reserves his right to do so in the future.

Further, on August 5, 2022, Horton and Moore were appointed Lead Plaintiffs, and its counsel, Girard Gibbs LLP and Malmfeldt Law Group P.C., were appointed Lead Counsel, in a separate class action filed on February 18, 2022, styled *Bayati v. GWG Holdings, Inc.*, 3:22-cv-00410-B (N.D. Tex.) ("*Bayati*"). That suit alleges the same claims on behalf of the same class of investors, against substantially overlapping defendants as alleged in the *Horton* complaint filed on May 26,

1

case because Movant filed a timely "motion in response to a notice," believes it has the "largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23" and should therefore be appointed Lead Plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).[2] Additionally, FMuller's selection of Berger Montague PC as Lead Counsel and Kendall Law Group, PLLC as Local Counsel for the Class is reasonable and should be approved.

On March 30, 2023, plaintiffs in the above-captioned action (the "Action") filed a securities class action complaint alleging that during the Class Period, the Defendants defrauded investors in violation of Sections 10(b), 15(c), and 20(a) of the Exchange Act. The PSLRA requires that the Court appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court must determine which movant has the "largest financial interest" in the relief sought by the Class and whether such movant has made a *prima facie* showing that the movant is a typical and adequate class representative under Federal Rule of Civil Procedure 23 ("Rule 23"). *See* 15 U.S.C. § 78u- 4(a)(3)(B)(iii)(I).

For the reasons stated herein, Movant respectfully submits that it is the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff. Movant purchased 200 shares of Preferred Stock of GWG for a total of $200,000 during the Class Period. Movant has the largest known loss in GWG's Preferred Stock of any other movant and a substantial financial interest in recovering losses attributable to Defendants' violations of federal securities laws.

Further, Movant satisfies the typicality and adequacy requirements of Rule 23 in that: (i) Movant's claims arise from the same course of events as those of the other Class members;

---

2023. Thus, the Lead Plaintiffs and Lead Counsel in the *Bayati* action appear to have filed a substantially identical lawsuit in this District on May 26, 2023, but have not yet published notice of their filing pursuant the PSLRA.

[2] A copy of Movant's Certification pursuant to the PSLRA is attached as Exhibit A to the Declaration of Joe Kendall, Esq. ("Kendall Decl."), submitted concurrently herewith.

(ii) Movant relies on similar legal theories to prove Defendants' liability; and (iii) Movant has retained experienced counsel and is committed to vigorously prosecuting the claims.

Finally, pursuant to the PSLRA, Movant respectfully requests that the Court approve its selection of Berger Montague PC as Lead Counsel and Kendall Law Group, PLLC as Local Counsel for the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class"). Proposed Lead Counsel and Local Counsel have decades worth of experience representing investors in shareholder litigation and securities class actions and possess the expertise and resources necessary to handle this complex litigation.

Accordingly, Movant respectfully requests that the Court appoint FMuller as Lead Plaintiff for the Class of purchasers of GWG Preferred Stock and approve its selection of Lead Counsel and Local Counsel.

## II.     STATEMENT OF FACTS[3]

GWG's business was founded in 2006 by brothers Steven F. Sabes and Jon R. Sabes. From 2006 through at least 2018, Defendants Steven and Jon Sabes were senior executive officers and controlling shareholders of GWG and its predecessor companies. From its founding through in or about 2018, GWG was primarily in the business of purchasing life insurance policies from insured individuals, with the goal of collecting policy benefits upon the death of the insureds.

GWG raised funds to purchase these life insurance policies primarily by selling GWG stock and bonds to investors. GWG's securities were sold through a network of approximately 140 regional brokers through Defendant Emerson Equity who sold the GWG securities to individual retail investors and retirement savers. These brokers received substantial fees and commissions (at

---

[3] These facts are derived from the allegations in the complaint. ECF No. 1.

times exceeding 5% of the securities' face value) from GWG for such sales. In addition, many brokers continued selling GWG securities, particularly GWG's L Bonds, despite their known risk and GWG's poor performance outlined in publicly filed documents.

In 2017, GWG's business was failing. Insureds were living longer than the projections that GWG had disclosed to investors, resulting in: (i) higher costs to maintain the insurance policies in the form of additional premiums; (ii) higher financing costs to obtain additional investor funds to make the required premium payments under the policies; and (iii) a longer wait to collect any eventual death benefits. GWG issued increasing amounts of its own securities to cover its increasing costs, satisfying obligations to old GWG investors with new GWG investor funds. The complaint alleges that at no time was revenue from the insurance policies that GWG had acquired sufficient to cover GWG's expenses.

Beginning on December 23, 2017, Defendants put into motion a plan that would see: (i) Defendants Jon and Steven Sabes exiting GWG in 2019 with tens of millions of dollars in GWG investor funds, and additional tens of millions of dollars in funding from GWG for their startup business, Defendant FOXO Technologies Inc.; and (ii) Defendant Heppner gaining control over GWG beginning in 2018 and diverting hundreds of millions of dollars to his company Defendant Ben LP. Defendant Heppner simultaneously diverted GWG investor funds for his own direct benefit, including millions of dollars to pay for private jet travel for his family and maintenance of a 1,500-acre luxury ranch for his personal use. Defendants caused GWG to sell hundreds of millions of dollars of securities to GWG investors, totaling over $1.2 billion during 2018-2020 alone, to finance their scheme.

On January 18, 2022, GWG disclosed that it was unable to make certain required payments to its investors. On April 20, 2022, GWG filed for bankruptcy. GWG investors have not received the payments to which they are entitled since at least February 2022.

Throughout the Class Period, Defendants failed to disclose to investors that: (i) they intended to, and did, misappropriate GWG assets, (ii) GWG's life insurance investment business had failed; and (iii) GWG could only repay prior investors by issuing increasing amounts of securities to new investors. In essence, Defendants had turned GWG into a Ponzi scheme.

## III.   ARGUMENT

### A.   FMuller Should Be Appointed Lead Plaintiff for GWG Preferred Stock Purchasers

FMuller respectfully submits that it should be appointed Lead Plaintiff on behalf of a proposed Class of purchasers of GWG Preferred Stock because it is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff"—*i.e.*, the plaintiff most capable of adequately representing the interests of the class—is the class member that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption in favor of appointing a movant as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies all of the PSLRA criteria and has complied with all of the PSLRA's requirements for appointment as Lead Plaintiff. FMuller has, to the best of its knowledge, the largest financial interest in this litigation and meets the relevant requirements of Federal Rule of Civil Procedure 23. In addition, Movant is not aware of any unique defenses Defendants could raise against it that would render it inadequate to represent the Class. Accordingly, Movant FMuller respectfully submits that it should be appointed Lead Plaintiff on behalf of purchasers of GWG Preferred Stock.

### 1. Movant Filed a Timely Motion

Movant FMuller has, by and through the instant Motion, made a timely motion in response to a PSLRA early notice. On April 3, 2023, pursuant to Section 21D(a)(3)(A)(I) of the PSLRA, notice was published on *Business Wire* advising members of the class: (1) the pendency of the Action; (2) the claims asserted therein; (3) the proposed Class Period; and (4) and the right to move the Court for appointment as lead plaintiff by June 2, 2023. *See* Kendall Decl., Ex. B. FMuller's Motion has been timely filed by the statutory deadline. Thus, Movant is eligible for appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

Additionally, as set forth in Movant's PSLRA certification, Fritz Muller, Director and duly authorized agent of FMuller, attests that he has reviewed the complaint and that FMuller is willing

to serve as a representative of the Class. *See* Kendall Decl., Ex. A. Accordingly, Movant satisfies the first requirement to serve as lead plaintiff for the class.

### 2. Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Holley v. Kitty Hawk, Inc.*, 200 F.R.D. 275, 277 (N.D. Tex. 2001). "To determine the largest financial interest, courts consider '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period.'" *Mullins v. AZZ, Inc.*, No. 4:18-CV-025-Y, 2018 WL 7504312, at *1 (N.D. Tex. Aug. 9, 2018) (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)).

At the time of this filing, Movant believes that it has the largest financial interest among class members purchased GWG's Preferred Stock and who filed timely applications for appointment as lead plaintiff and is presumed to be the "most adequate plaintiff." Movant purchased 200 shares of Preferred Stock of GWG during the Class Period for $200,000. *See* Kendall Decl., Ex. A. As of April 20, 2022, the date GWG filed for Chapter 11 bankruptcy protection, FMuller held all 200 shares of Preferred Stock of GWG. *Id*. To the best of its knowledge, there are no other class members with a larger financial interest seeking to serve as lead plaintiff of a proposed Class of GWG Preferred Stock purchasers. As such, Movant believes it has the "largest financial interest in the relief sought by the class," and thus satisfies the second PSLRA requirement to be appointed as Lead Plaintiff for that Class.

### 3. Movant Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." At this stage of the litigation, a movant "need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *AZZ, Inc.*, 2018 WL 7504312, at *1. Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"In making its determination that a proposed Lead Plaintiff satisfies the requirements of Rule 23, a court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient." *Hohenstein v. Behringer Harvard REIT I, Inc.*, No. 3:12-CV-3772-G, 2012 WL 6625382, at *2 (N.D. Tex. Dec. 20, 2012). "Moreover, 'typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.'" *Id.* (quoting *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998)).

#### a. Movant's Claims are Typical

Movant's claims are typical of the claims asserted by the proposed members of those Class members who purchased GWG's Preferred Stock. Typicality "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those they purport to represent." *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 625 (5th Cir. 1999). Identity of claims is not required; "[r]ather, the critical inquiry is whether the class representative's claims have the same essential characteristics as that of the putative class." *Schwartz v. TXU Corp., et al.*,

No. 3:02-CV-2243-K, 2005 WL 3148350, *14 (N.D. Tex. 2005). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id*.

Like all members of the class, Movant alleges that Defendants made material misstatements and that they intended to, and did, misappropriate GWG assets. Further, Defendants misrepresented that GWG's life insurance investment business had failed and was being operated as a Ponzi scheme. Movant, like all members of the class, purchased GWG securities in reliance on Defendants' alleged misstatements and was damaged thereby. Accordingly, Movant's interests and claims are "typical" of the interests and claims of the class.

### b.     Movant is an Adequate Representative

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." The adequacy requirement requires "an inquiry into [1] the zeal and competence of the representatives' counsel and [2] the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005) (citing *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)).

Movant will fairly and adequately represent the interests of the members of the proposed Class who purchased GWG's Preferred Stock. Movant has resources and motivation sufficient to pursue the Action to a successful conclusion. Movant is committed to vigorously pursuing the best recovery possible for itself and all other Class members. *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997). FMuller, a Florida limited liability company, was formed for the sole purpose of administering the assets of Fritz Muller, a director of the company, who has managed its investment activities since its formation in 2015. Fritz Muller, a retired civil engineer and

graduate of the Universidad Central de Venezuela in 1989, has been investing for over 25 years. FMuller therefore is more than an adequate representative of the Class of purchasers of GWG Preferred Stock. Moreover, the interests of the Movant and the Class are perfectly aligned. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Movant and other Class members who purchased GWG Preferred Stock.

Movant further demonstrated its adequacy through its selection of Berger Montague PC as Lead Counsel to represent the Class in this action. Fritz Muller selected Berger Montague based upon the firm's securities litigation experience. Prior to filing the Motion, Fritz Muller had multiple discussions with attorneys from Berger Montague via email and telephone and participated in a video meetings with several attorneys from Berger Montague on May 2, 2023 and May 30, 2023. As discussed more fully below, Berger Montague PC is a highly qualified and experienced firm in the area of securities class action litigation and has repeatedly demonstrated an ability to conduct securities class action litigation effectively.

### B. Lead Plaintiff's Selection of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not interfere with lead plaintiff's selection unless necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Here, Movant has selected Berger Montague PC as Lead Counsel for the class and Kendall Law Group, PLLC as Local Counsel.

Berger Montague PC has a long record of success in securities litigation and has achieved many of the largest securities recoveries since Congress enacted the PSLRA. Since its founding in 1970, the firm has advised clients – public institutional investors, private institutional investors, and individuals – on litigation and recovery options in securities proceedings throughout the United States and internationally, including in this District. The firm has served as lead or co-lead

counsel in numerous major securities class action cases where substantial settlements were achieved on behalf of investors. Most recently in this District, Berger Montague served as lead counsel in *Howell Family Trust DTD 01/27/2004 v. Hollis M. Greenlaw, et al.*, No. 3:18-cv-02864-M (N.D. Tex.), a derivative case alleging a Ponzi scheme and improper related party transactions, in which Berger Montague was sole lead counsel. During the final settlement approval hearing on March 25, 2021, Judge Brantley Starr praised Berger Montague's litigation of the case as "a model on how to handle a case like this," and as a "testament" to counsel's "diligence and professionalism." The court concluded that "I wish I could send everyone to y'all's school of litigation management."

In addition, across its various departments, Berger Montague has been involved in some of the most important class actions of the last 50 years. For example, the firm was one of the principal counsel for plaintiffs in the *Drexel Burnham Lambert/Michael Milken* securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of *Drexel* in the late 1980's. The firm was also among the principal trial counsel in the *Exxon Valdez Oil Spill* litigation in Anchorage, Alaska, a trial resulting in a record jury award of $5 billion against Exxon, later reduced by the U.S. Supreme Court to $507.5 million. Berger Montague was lead counsel in the *School Asbestos Litigation*, in which a national class of secondary and elementary schools recovered in excess of $200 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis. In sum, Berger Montague is an experienced and highly resourced law firm equipped to provide the putative class here with exceptional representation. *See* Kendall Decl., Ex. C.

Likewise, Local Counsel has extensive experience in shareholder litigation. Former United States District Judge Joe Kendall is the owner of Kendall Law Group. Mr. Kendall served on the federal bench in the Northern District of Texas from 1992-2002, appointed by President George Herbert Walker Bush. Since leaving the bench for economic reasons and returning to trial work, Mr. Kendall has had tremendous success at the prosecution of patent and class action litigation either as lead, co-lead or local counsel. While on the federal bench, Mr. Kendall handled class actions of various types and presided over numerous civil jury trials, including complex litigation, securities, antitrust, qui tam, medical malpractice, products liability, and patent infringement cases. In his career as a lawyer, Mr. Kendall has personally tried more than 100 jury trials to judgment. Additional information regarding Mr. Kendall and his firm is set forth in the Kendall Law Group, PLLC firm resume. Kendall Decl., Ex. D.

Thus, the Court may be assured that, by granting the Motion, the proposed Class will receive the highest caliber of legal representation on behalf of purchasers of GWG Preferred Stock. Accordingly, the Court should approve Movant's selection of counsel.

## IV.  CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court enter an Order: (1) appointing Movant as Lead Plaintiff for the members of the proposed Class who purchased GWG Preferred Stock; (2) approving Lead Plaintiff's selection of Berger Montague PC as Lead Counsel and Kendall Law Group, PLLC as Local Counsel for the members of the Class who purchased GWG Preferred Stock; and (3) granting such other relief as the Court may deem to be just and proper.

DATED:  June 2, 2023                          Respectfully submitted,


/s/ Joe Kendall
JOE KENDALL
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Telephone:  214/744-3000 / 214/744-3015 (fax)
jkendall@kendalllawgroup.com

*Local Counsel for Movant FMuller LLC and Proposed Local Counsel for the Class*

**BERGER MONTAGUE PC**
Michael Dell'Angelo
1818 Market Street, Suite 3600
Philadelphia, Pa 19103
Tel: (215) 875-3000
Email: mdellangelo@bm.net

*Attorneys for Movant FMuller LLC and Proposed Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Joe Kendall*
JOE KENDALL